UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SIERRA CLUB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:08-cv-0437-SEB-TAB |
| vs. ) | |
| ) | |
| DUKE ENERGY, INDIANA, INC., ) | |
| CINERGY CORP., CINERGY PSI, INC., ) | |
| PSI ENERGY, INC., CINERGY POWER ) | |
| GENERATION SERVICES, LLC., ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

This cause is before the Court on the Motion to Dismiss [Docket No. 18], filed on June 30, 2008, by Defendants, Duke Energy, Indiana, Inc., Cinergy Corp., Cinergy PSI, Inc., PSI Energy, Inc., and Cinergy Power Generation Services, LLC (collectively "Duke"). In the Motion to Dismiss, Duke contends that the Court should abstain from deciding, and dismiss, Plaintiff, Sierra Club's action because it threatens to interfere with an ongoing Indiana adjudicatory proceeding. Duke argues, in the alternative, that the Court should stay the proceedings pending resolution of the state proceedings. For the reasons detailed in this entry, Defendants' Motion to Dismiss is <u>DENIED</u>.

*Factual Background*

## I. The Parties

Duke owns and operates a power plant referred to as the Edwardsport Generating System ("Edwardsport plant") in Knox County, Indiana.[1]  Sierra Club is an international not-for-profit membership organization, headquartered in San Francisco.  Sierra Club has more than 1.3 million members and supporters, including some who live, work, and recreate in the area surrounding the Edwardsport plant.

## II. The Present Litigation

Sierra Club brought the present claim under the Citizen Suit provision of the Clean Air Act, 42 U.S.C. §7604, alleging that Duke has modified one or more of the boilers at the Edwardsport plant without obtaining the necessary permits and without subsequently complying with various Clean Air Act emissions standards. With this lawsuit, Sierra Club seeks an order enjoining Duke from continuing to operate the Edwardsport plant in violation of the Clean Air Act, requiring Duke to apply for permits for projects already completed, requiring Duke to install additional pollution controls, and ordering Duke to pay penalties for past violations at the plant.

---

[1]Duke Energy, Indiana, Inc. is an Indiana corporation; PSI Energy, Inc. is also an Indiana corporation; Cinergy Corp. is a Delaware corporation with its principal place of business in Cincinnati, Ohio; and Cinergy Power Generation Services, LLC, was at all relevant times an unregulated subsidiary of Cinergy Corp.  These entities, together, own and operate the Edwardsport plant.

*A. Clean Air Act Statutory Scheme*

The federal Clean Air Act governs air quality and emissions standards throughout the United States. It is designed to "protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. §7401(b)(1).

Under the Act, The United States Environmental Protection Agency ("EPA") prescribes national air quality standards, which each state is required to implement by adopting a state implementation plan. 42 U.S.C. §7409(a)(1)(B). Specifically at issue here is the Prevention of Significant Deterioration ("PSD") program, which each state must include in its implementation plan. See 42 U.S.C. §§7470-7492; 40 C.F.R. §51.166; 69 Fed. Reg. 29071.

The PSD program prevents the deterioration of air quality by requiring authorization for the construction of any new or modified source of air pollution. Prior to commencing any "major modification," a company must obtain a permit from the authorizing agency, which ensures that the modification complies with "best available control technology" ("BACT") emissions limits.[2] 40 C.F.R. §§52.21(i), (j)(3). Put simply, if the proposed energy source will pollute more than the existing energy source, the permit must be denied.

---

[2]"Best available control technology" is "an emission limitation based on the maximum degree of reduction of each pollutant subject to regulation . . . emitted from or which results from any major emitting facility, which the permitting authority, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such facility." 42 U.S.C. §7479(3).

Pursuant to the Clean Air Act, Indiana was required to promulgate a state implementation plan in conformity with the PSD program. 42 U.S.C. §§7410(a)(2)(C), 7471. Indiana did not fully comply with this requirement for a number of years, so the EPA imposed a federally administered PSD program for Indiana. See 40 C.F.R. §52.793; 46 Fed. Reg. 9580, 9585 (Jan. 19, 1981). Recently, however, the EPA approved Indiana's revised PSD regulations proposal, which now governs the PSD program in Indiana. The Indiana Department of Environmental Management ("IDEM") is responsible for overseeing and realizing the regulatory scheme in Indiana. 326 Ind. Admin. Code §2-2.

### III. Sierra Club's Appeal of the IDEM Permit Decision

In August 2006, Duke submitted a permit application to IDEM, requesting permission to build a new replacement generating unit at the Edwardsport plant. IDEM reviewed the application and issued the permit on January 25, 2008.

On February 12, 2008, Sierra Club and three other petitioners filed an administrative appeal of IDEM's decision with Indiana's Office of Environmental Adjudication ("OEA"), as authorized by Title 315 of the Indiana Administrative Code. In its appeal, Sierra Club asserts that IDEM erred by departing from PSD program guidelines in its decision to issue a permit to Duke. According to Sierra Club, IDEM's conclusion that the proposed Edwardsport facility would be an environmental improvement over the existing facility was based upon an overly generous interpretation of historic data. The historic data Sierra Club challenges relates to thirteen different

improvement activities undertaken by Duke between 1986 and 1994. IDEM did not determine that any of these improvement activities constituted "major modifications" but instead assumed that Duke's existing facility was in compliance with the PSD program. Sierra Club argues that the improvement activities were, in fact, "major modifications" and that, because Duke did not obtain permits to complete them, the existing facility actually violated the PSD program. See Sierra Club's Verified Petition for Review to OEA at 16-27.[3] Thus, Sierra Club asserts in its OEA appeal that, if IDEM had compared the proposed facility to the facility that *would have existed* at the Edwardsport plant had Duke been required to follow the PSD program all along, the proposed facility would not have been an improvement and the permit would have been denied. The OEA has not issued a final decision in the Sierra Club appeal.

## *Legal Analysis*

### I. *Legal Standards*

Sierra Club's claims are brought under Section 7604(a)(3) of the Clean Air Act, which authorizes a citizen to sue, in federal court, an entity that "proposes to construct or constructs any new or modified major emitting facility without a [PSD] permit." 42 U.S.C. §7604(a)(3); Sierra Club v. Franklin County Power of Illinois, 546 F.3d 918, 929 (7th Cir. 2008). Duke contends that the Court should abstain from deciding this case,

---

[3] As Sierra stated, by assuming that "all of the historic emissions from the existing boilers and associated equipment [at the Ewardsport plant were] allowable," IDEM failed to account for emissions levels that vastly exceeded federal and state "allowable" limits. See Sierra Club's Verified Petition for Review to OEA at 16-17.

under the abstention doctrine announced in Burford v. Sun Oil Co., 319 U.S. 315 (1943). Duke presents its argument for abstention as a motion to dismiss, which is procedurally proper because the "normal result of Burford abstention" is dismissal. See Illinois Bell Telephone Co., Inc. v. Global Naps Illinois, Inc., 551 F.3d 587, 595 (7th Cir. 2008) (citing Hi Tech Trans, LLC v. New Jersey, 382 F.3d 295 (3d Cir. 2004); Alleghany Corp. v. Eakin, 712 F.Supp. 716, 717 (S.D. Ind. 1989).

*A.  Abstention Standard*

Federal district courts are obligated to exercise the jurisdiction Congress has established: "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." Cohens v. Virginia, 19 U.S. 264 (1821); see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996); Colorado River Water Conservation v. United States, 424 U.S. 800, 813 (1976). Nevertheless, in some situations, a district court must abstain from exercising its jurisdiction when "principles of comity and federalism" dictate. Beres v. Village of Huntley, Ill., 824 F.Supp. 763, 766 (N.D. Ill. 1992).

Under the Burford abstention doctrine, if a district court finds a state action that is parallel to the federal action before it, the court must decide whether to abstain from exercising jurisdiction. Schneider Nat. Carriers, Inc. v. Carr, 903 F.2d 1154, 1156 (7th Cir. 1990). The Supreme Court, applying its holding in Burford, set forth the specific circumstances under which a federal court must abstain:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.

New Orleans Pub. Serv. Inc. v. Council of New Orleans, 491 U.S. 350 (1989) ("NOPSI") (quoting Colorado River, 424 U.S. at 814).  Moreover, a court must balance the interests at stake, as instructed by Colorado River: "Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest."  Colorado River, 424 U.S. at 815; see also Burford, 319 U.S. at 333.  Courts assessing the need to abstain under the Burford doctrine are cautioned that it is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it."  Colorado River, 424 U.S. at 813 (referring to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them").

## II. *Application of Burford Abstention*

Duke contends that we must abstain from adjudicating the case at bar because of Sierra Club's pending appeal with the OEA.  The parties agree that there is some conceptual overlap between the two pending cases; the issue before the Court regards the nature and extent of this overlap.  In the state proceeding before the OEA, Sierra Club

challenges IDEM's reliance on existing emissions levels at the Edwardsport plant to calculate probable changes in emissions that would result from the proposed facility. Sierra Club argues that IDEM should have based its comparison on emissions levels that *would have existed* at the Edwardsport plant had Duke applied for and received permits for certain previous modifications. In the litigation at bar, Sierra Club alleges that Duke violated the Clean Air Act by failing to obtain permits for those previous modifications in the first place.

The two parties offer competing theories as to the extent of the overlap in the issues raised in this case compared to those being adjudicated in the OEA appeal. According to Duke, the case at bar is nothing more than a collateral attack of IDEM's decision to issue a permit to Duke to construct the new facility at the Edwardsport plant. Duke argues that one issue in particular is central to both actions: "both OEA and this Court have been asked by the Sierra Club to decide whether Duke's past activities at the present Edwardsport units constitute 'major modifications' under the state's PSD program." Def.'s Reply at 8. Duke contends that, "if this Court and OEA disagree . . . on the outcome of the shared legal issue now pending before both forums, IDEM may be faced with diametrically opposite views on a critical aspect of its State-run Clean Air Act program, and the integrity of the state process will be diminished, if not disrupted, as a result." Id.

Sierra Club, in contrast, asserts that the case at bar does not raise the same issues as the case pending before the OEA. In Sierra Club's view, "[T]he issue is whether Duke violated the law in the past by making modifications to the [Edwardsport plant] *without*

*getting a permit* from IDEM or the [EPA]." Pl.'s Response at 14 (emphasis in original). In other words, Sierra Club stresses that the aim of its federal suit is to target "historic, unlawful modifications" made at the Edwardsport plant, while the OEA appeal "involves review of IDEM's permit to construct a *new* generating unit." Id. at 15 (emphasis added).

      We must first determine if parallel proceedings do, in fact, exist. Actions are "parallel if substantially the same parties are litigating substantially the same issues simultaneously in two fora." Schneider, 903 F.2d at 1156. Sierra Club alleges in the case at bar that Duke violated the law by failing to obtain permits for changes Duke made at the Edwardsport plant. To decide this issue, we will also have to decide whether or not those changes were "major modifications." That same determination will likely also be at the core of the OEA's decision, based on the arguments Sierra Club made in its appeal to the OEA. Thus, at least one key issue is substantially the same. Furthermore, although Sierra Club is joined by other petitioners in its appeal to the OEA, the primary parties in both proceedings are Duke and Sierra Club. Therefore, the present federal litigation is parallel in that way as well to a state administrative proceeding.

      Next, we must determine if there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case." NOPSI, 491 U.S. 350. As just noted, if there is any issue that "transcends the immediate dispute," it is the question of whether the previous changes Duke made at the Edwardsport plant were "major modifications." This, however, is a federal question because that term is governed by the Clean Air Act. In Indiana, the question is uniquely federal because, at all times relevant to this cause of action, Indiana did not have an EPA-

approved PSD program.  Rather, the PSD program in Indiana was governed expressly by the Clean Air Act and the EPA's regulations.  45 Fed. Reg. 52,676, 52,741 (Aug. 7, 1980); 46 Fed. Reg. 9,580, 9,583 (Jan. 19, 1981); see also Pl.'s Compl. at ¶27 ("At all relevant times, the federal PSD program at 40 C.F.R. §52.21 applied to the projects at issue in this case.").  For the same reason, this case cannot interfere with state policy, because at all relevant times, the PSD program was operating under federal policy in Indiana.  Because the shared issue in this case is not a "difficult question of state law," the first basis for Burford abstention is not met.

We must also determine whether the "exercise of federal review of the question in [this] case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  NOPSI, 491 U.S. 350.  The Seventh Circuit recently observed that "Burford is limited to cases in which 'adjudication in federal court would unduly intrude into the processes of state government or undermine the State's ability to maintain desired uniformity' or invade 'the State's interests in maintaining uniformity in the treatment of an essentially local problem.'"  Illinois Bell Telephone Co., Inc. v. Global Naps Illinois, Inc., 551 F.3d 587 (7th Cir. 2008) (quoting Quackenbusch v. Allstate Ins. Co., 517 U.S. 706, 728 (1996)).  The court stressed that Burford is to be used only in cases involving essentially local problems and concluded that abstention was improper in that case:

> The regulatory issues that arise in cases governed by the Telecommunications Act are not "local" in the Burford sense.  The role that the Act carves out for the states is that of ancillary enforcers of the comprehensive scheme of federal telecommunications regulation set fort in the Act.  The state commissions are not enforcing policies central to state government when they are regulating

> telecommunications; in that role they are "deputized federal regulator[s]" of the Telecommunications Act. Id. (quoting MCI Telecommunications Corp. v. Illinois Bell Tel. Co., 222 F.3d 323, 344 (7th Cir. 2000).

Id. at 595.

The case at bar is governed by the Clean Air Act as well as by Indiana regulations promulgated in conformity with that Act. While there may be situations in which state regulations on air quality are "central to state government," this is not such a case. The role Indiana plays in developing a state implementation plan and a PSD program is that of "ancillary enforcer," not primary policy maker. Indiana is required, by the Clean Air Act and federal regulations, to *implement* air quality standards in conformity with the standards laid out by the EPA. Furthermore, the plan Indiana has in place was subject to approval or rejection by the EPA. Indiana's plan was for many years rejected and state air quality standards were governed expressly by specific EPA regulations, a fact that underscores that the policy being developed is federal, even though local interests in limiting pollution are at stake. See 40 C.F.R. §52.793; 46 Fed. Reg. 9580, 9585 (Jan. 19, 1981).

As with Illinois Bell, the regulatory issues that arise in EPA enforcement cases such as this one are not "local" in the Burford sense. 551 F.3d at 595. When a case is governed by the federal Clean Air Act, federal courts are not "comparatively unsophisticated" in relation to state courts, as they were in Burford. NOPSI, 491 U.S. at 360. Recognizing that Burford is "an extraordinary and narrow exception," and that there is no "important countervailing interest" requiring abstention, we must exercise "the duty of a District Court to adjudicate a controversy properly before it." Colorado River, 424

U.S. at 813, 815.  Therefore, Duke's Motion to Dismiss shall be denied.

### III.  *Duke's Request for a Stay*

Duke argues, in the alternative, that "[s]hould this Court determine . . . that dismissal without prejudice is not required here, the policies advanced by the Burford abstention doctrine nevertheless warrant at the very least a stay of this action pending completion of the Indiana administrative matter."  Duke's Br. in Supp. at 18.  Colorado River permits a district court to issue a stay pending the outcome of the parallel state action as a "matter of 'wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation.'"  Finova Capital Co. v. Ryan Helicopters U.S.A., Inc., 180 F.3d 896 (7th Cir. 1999) (quoting Colorado River, 424 U.S. 817).  Nevertheless, "the 'clearest of justifications' must be present for a federal court to stay a proceeding pending completion of a state action."  Tyrer v. City of South Beloit, Ill., 456 F.3d 744 (7th Cir. 2006); see also Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 23-24 (1982).  The Seventh Circuit has considered a long list of factors weighing on the decision to stay:

> (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim.

Tyrer, 456 F.3d at 754.

No single factor is "necessarily determinative." Id. (quoting Colorado River, 424 U.S. at 818). Rather, "what is required is a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." Id. at 755. In the case at bar, two factors weigh in favor of a stay: first, the OEA action was filed two months before the action was brought in this Court; and, second, "piecemeal litigation" is certainly a concern because of the possibility that this Court and the OEA may come to differing conclusions as to the application of the term "major modification."

Weighing against a stay are the following seven factors: first, the state has not assumed jurisdiction over any "property"; second, as we have discussed, the law governing the shared issue is primarily federal; third, the state action is not adequate to protect Sierra Club's rights, because the bulk of Sierra Club's claims relate to alleged past wrongs and cannot be brought before the OEA; fourth, the OEA and this Court do not have concurrent jurisdiction over the ultimate issues presented because this Court does not review permit decisions, nor does the OEA have jurisdiction over enforcement suits under the Clean Air Act; fifth, the federal forum is not inconvenient but is rather the prescribed forum under the Clean Air Act; sixth, removal is not available from the administrative proceeding; and, seventh, the federal claim in this case is neither contrived nor vexatious.[4]

Clearly, more factors weigh against the imposition of a stay, but that is not the end

---

[4]The relative progress of the actions does not, in our view of the facts of this case, weigh on either side.

of our analysis.  Of these factors, one has special significance for our decision: "Particular weight must be given to the presence of a federal question in the case; that factor weighs heavily against abstention."  Sverdrup Corp. V. Edwardsville Community Unit School Dist. No. 7, 125 F.3d 546, 549 (7th Cir. 1999).  This case is brought under the federal Clean Air Act, and the shared issue in this case involves the application of the term "major modification," which, although implemented by Indiana's plan, is derived from the Clean Air Act and the EPA's federal regulations.  Therefore, this factor in particular convinces the Court not to stay the action pending resolution of the state proceeding.

As the Supreme Court has stated: "[W]e emphasize that our task in cases such as this is not to find some substantial reason for the *exercise* of federal jurisdiction by the district court; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the *surrender* of that jurisdiction."  Moses H. Cone, 460 U.S. at 23-24 (citations omitted).  In other words, "the presumption is against abstention."  Sverdrup, 125 F.3d at 549 (quoting Allendale Mut. Ins. Co. v. Bull Data Sys., 10 F.3d 425, 430 (7th Cir. 1993)).

Heeding that limitation, and recognizing the importance that the Seventh Circuit has placed on the existence of a federal question, we find that a stay is not appropriate in this case.  Although the possibility remains that this Court and the OEA will apply the "major modification" definition differently, we believe that concern is diminished by the fact that the case in this Court is one aimed at rectifying past wrongs, whereas the OEA action seeks to rescind permission for future construction.  In other words, the final decisions of the state and federal proceedings, if they happen to differ, will not

necessarily clash. Thus, we cannot conclude that this case is one in which the "clearest of justifications" presents itself for the issuance of a stay.

## IV. Conclusion

Having carefully considered the parties' arguments regarding abstention, we conclude that this is not a case fitting into the "extraordinary and narrow" Burford doctrine. Accordingly, Defendants' Motion to Dismiss is DENIED.

Date: 02/11/2009

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Scott R. Alexander
TAFT STETTINIUS & HOLLISTER LLP
salexander@taftlaw.com

David C. Bender
GARVEY MCNEIL MCGILLIVRAY, S.C.
bender@gmmattorneys.com

Robert R. Clark
TAFT STETTINIUS & HOLLISTER LLP
rclark@taftlaw.com

Julie L. Ezell
DUKE ENERGY LEGAL DEPARTMENT
julie.ezell@duke-energy.com