IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SIERRA CLUB, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:08-cv-0437-SEB-TAB |
| | ) |
| DUKE ENERGY INDIANA, INC., | ) |
| CINERGY CORP., | ) |
| CINERGY PSI, INC., | ) |
| PSI ENERGY, INC., | ) |
| CINERGY POWER GENERATION | ) |
| SERVICES, LLC, | ) |
| | ) |
|        Defendants. | ) |

**DUKE ENERGY'S RESPONSE BRIEF IN OPPOSITION TO
PLAINTIFF'S FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT
ON BURDEN OF PROOF FOR "RMRR"**

I.    INTRODUCTION

Plaintiff's First Amended Complaint alleges that Defendants[1] violated the Clean Air Act when they carried out several projects at Duke Energy's Edwardsport Generating Station without obtaining preconstruction permits under the "Prevention of Significant Deterioration" ("PSD") provisions of that Act. The relevant PSD regulations, however, exclude "routine maintenance, repair and replacement" ("RMRR") from the definition of plant modifications for which preconstruction permits are required. The issue on this summary judgment motion is which party has the burden of proving whether the projects were (or were not) RMRR. Under guiding Seventh Circuit caselaw, because RMRR is an exclusion from the definition of the type of projects covered by the PSD provisions of the Clean Air Act, Plaintiff has the burden of proving

---

[1] Defendants will be referred to together as "Duke Energy."

Duke Energy's projects were not routine maintenance, repair and replacement and are therefore covered by the Act. Plaintiff's First Motion for Partial Summary Judgment should be denied, and the Court should rule that Plaintiff has the burden of proof on this issue.

## II.  MATERIAL FACTS

Plaintiff's "Statement of Material Facts Not in Dispute" is not really a recitation of facts, but is mostly allegations from Plaintiff's First Amended Complaint. Duke Energy disputes Plaintiff's "Material Fact" No. 3 because Duke Energy did not label its Thirteenth Defense, asserting its projects were routine maintenance, repair and replacement, as an "Affirmative Defense," but simply a "Defense." (*See* Duke's Answer and Defenses to Pl.'s First Am. Compl. (Docket No. 58) at 28; Duke's Answer and Defenses to the Sierra Club Compl. (Docket No. 41) at 9.)

## III.  ARGUMENT

### A.  Plaintiff has the burden of proving all elements of its claims.

Duke Energy agrees that the question of which party has the burden of proving whether the Duke Energy projects at issue in this action were (or were not) "routine maintenance, repair and replacement" is purely a question of law and is therefore appropriately decided on a motion for partial summary judgment. It is indisputable that Plaintiff has the burden of proving all elements of its claims. *See, e.g., Getty Oil Co.* (*E. Operations*) *v. Ruckelshaus*, 467 F.2d 349, 357 (3d Cir. 1972) ("in an enforcement proceeding, the burden of establishing a violation of the applicable regulation would be carried by the Government"); *United States v. SCM Corp.*, 667 F. Supp. 1110, 1124 (D. Md. 1987) (government has burden of establishing regulatory violation under Clean Air Act).

Duke Energy pleaded as its "Thirteenth Defense" that "[t]he claims in the Plaintiff's Complaint are barred because the allegedly unlawful actions constituted routine maintenance, repair and replacement activity that Duke lawfully undertook."  (Duke's Answer and Defenses to Pl.'s First Am. Compl. (Docket No. 58) at 28.)  But this does not automatically shift the burden of persuasion on this issue.  Duke Energy pleaded numerous other "Defenses" for which the burden of proof remains with Plaintiff, for example, failure to state a claim, standing (or lack thereof), and Plaintiff cannot meet its "burden of showing that Defendants . . . should have predicted a significant net emission increase . . . ."  (*Id.* at 26-28.)  Plaintiff cannot therefore shift the burden of proof on the RMRR issue to Duke Energy merely by labeling (actually mislabeling) this as an "affirmative defense."

B.   The Regulatory Framework

Plaintiff's First Amended Complaint alleges that Duke Energy carried out several projects at its Edwardsport Generating Station in violation of the Clean Air Act because Duke Energy did not obtain preconstruction permits for those projects under the PSD provisions of the Clean Air Act.  The permit provision states:

> Preconstruction requirements
>
> No major emitting facility on which construction is commenced after August 7, 1977, may be constructed in any area to which this part applies unless—
>
> (1)  a permit has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part; . . . .

42 U.S.C. § 7475(a)(1).  Section 7479 of 42 U.S.C. states: "The term 'construction' when used in connection with any source or facility, includes the modification (as defined in section 7411(a)

of this title) of any source or facility." Section 7411(a), which is in the New Source Performance Standards ("NSPS")[2] portion of the Clean Air Act, in turn, defines "modification" as follows:

> The term "modification" means any physical change in, or change in the method of operation of, a stationary source which increases the amount of any air pollutant emitted by such source or which results in the emission of any air pollutant not previously emitted.

42 U.S.C. § 7411(a)(4).

The Environmental Protection Agency ("EPA") promulgated PSD regulations to implement these provisions of the Clean Air Act. The regulations at the center of this summary judgment motion state:

> "Major modification" means any physical change in or change in the method of operation of a major stationary source that would result in a significant net emissions increase of any pollutant subject to regulation under the Act.
>          . . . .
>
> A physical change or change in the method of operation shall not include:
>
> Routine maintenance, repair and replacement;

40 C.F.R. § 52.21(b)(2)(i), (iii) (1986).[3] Thus, if a power station carries out routine maintenance, repair and replacement, such projects do not constitute a "modification" that would trigger the

---

[2] The PSD provisions of the Clean Air Act apply to areas in which certain air quality standards have been attained (or areas that are unclassifiable) and are designed to prevent significant deterioration of air quality in those areas. *See United States v. Duke Energy Corp.*, 278 F. Supp. 2d 619, 628 & n.7 (M.D.N.C. 2003), *aff'd on other grounds*, 411 F.3d 539 (4th Cir. 2005), *judgment vacated,* 549 U.S. 561 (2007). The NSPS provisions apply to new sources and to certain modifications of existing sources. *See id.* at 628. The PSD provisions are part of the New Source Review ("NSR") program enacted in 1977.

[3] The analogous NSPS regulation states:

> The following shall not, by themselves, be considered modifications under this part:
> (1) Maintenance, repair and replacement which the Administrator determines to be routine for a source category . . . .

40 C.F.R. § 60.14(e).

requirement to obtain a PSD preconstruction permit. To prevail on its Clean Air Act claims, Plaintiff should have the burden of proof on this issue.

      C.      Plaintiff has the burden of proof under the Seventh Circuit's analysis in *Chicago Club.*

The Seventh Circuit provided detailed guidance for analyzing an issue like this in *EEOC v. Chicago Club*, 86 F.3d 1423 (7th Cir. 1996). The issues in *Chicago Club* were whether the Chicago Club was a private club and therefore outside the coverage of Title VII and which party had the burden of proof on this issue. *Id.* at 1429. The Seventh Circuit acknowledged the quote from a number of cases that the Sierra Club quotes here—"'One who claims the benefit of an exception from the prohibition of a statute has the burden of proving that his claim comes within the exception'"—but then directed that a court should engage in a detailed analysis instead of just applying this quote in knee-jerk fashion. *Id.* at 1429-31 (quoting *Mills Music, Inc. v. Snyder*, 469 U.S. 152, 188 n.20 (1985) (White, J., dissenting)). As the Seventh Circuit explained, there is "[a]n important distinction . . . between exceptions to statutory regimes and exclusions from the class of entities defined as within the reach of a statutory regime." *Id.* at 1430. The Seventh Circuit cited a case the Sierra Club cites here, *United States v. First City National Bank of Houston*, 386 U.S. 361 (1967), as an example of an exception to a statutory regime.[4] In that case, section 7 of the Clayton Act prohibited acquisitions or mergers that substantially lessened competition. However, a provision in the Bank Merger Act excepted certain bank mergers from the prohibition of the Clayton Act if the Comptroller of the Currency found the public interest

---

[4] The Seventh Circuit also cited *FTC v. Morton Salt Co.*, 334 U.S. 37 (1948), which the Court in *First City National Bank* quoted for placing the burden on the party benefitting from an exception, as another case involving an exception from a prohibition—not an exclusion from a definition. *Chicago Club*, 86 F.3d at 1430. *Morton Salt* dealt with the Robinson-Patman Act, which prohibits price discrimination that substantially lessens competition. *See* 334 U.S. at 40 n.1. However, a provision in the Robinson-Patman Act specifically excepts price differentials that are based on different costs. *See id.* at 44. Because this is an exception from a statutory prohibition, the defendant has the burden of proving this "cost justification" defense. *Id.* at 44-45.

outweighed the anticompetitive effects of the merger. *Id.* at 364. Because this was "an exception to the prohibition of a statute," the banks had the burden of proving the exception applied. *Id.* at 366.

In contrast, the Title VII provision at issue in *Chicago Club* defined "employer" and specifically stated "such term does not include . . . a bona fide private membership club . . . ." 42 U.S.C. § 2000e(b). Private clubs are <u>excluded</u> from the definition of covered "employers." As the Seventh Circuit reasoned, "There is no exception contained in § 2000e(b); private clubs are defined not to be employers. The exclusion is incorporated in the definition." 86 F.3d at 1430. The Seventh Circuit strongly implied that the EEOC therefore had the burden of proving the Chicago Club was an employer (i.e., not a private club), but stopped short of ruling on the burden of proof because the Chicago Club had won in the district court and had not filed a cross-appeal on this issue. *Id.* at 1429, 1431-32.

The same reasoning applies here. RMRR is an exclusion from the definition of "modification" to which the PSD requirements apply. It is not an exception to a statutory prohibition.

> D. <u>Because RMRR is an exclusion from the regulatory definition, Plaintiff has the burden of proving Duke Energy's projects are not RMRR.</u>

As Plaintiff notes, several courts have addressed the issue of which party has the burden of proof on the RMRR issue under the Clean Air Act. But only three of these courts have even attempted the careful analysis called for by *Chicago Club*: the Middle District of North Carolina in *Duke Energy,* 278 F. Supp. 2d at 619; the Eastern District of Kentucky in *United States v. Eastern Kentucky Power Cooperative, Inc.* 498 F. Supp. 2d 976 (E.D. Ky. 2007); and the Eastern District of Tennessee in *National Parks Conservation Ass'n v. TVA*, 618 F. Supp. 2d 815 (E.D. Tenn. 2009).

6

In *Duke Energy*, the North Carolina district court specifically applied the analytical approach the Seventh Circuit recommended in *Chicago Club*. 278 F. Supp. 2d at 639. The court examined the text of the PSD regulation, "'[a] physical change . . . shall not include . . . [r]outine maintenance, repair, and replacement,'" and found RMRR is an exclusion from the definition of physical changes covered by the PSD requirements. *Id.* (quoting 40 C.F.R. § 51.166(b)(2)(iii)(a) (1987)). Because this is an exclusion from the definition of modifications covered by the statute, the court held that the plaintiff EPA had the burden of proving Duke Energy's projects were not routine maintenance, repair and replacement.[5]  *Id.* at 639-40.

Indeed, EPA itself has repeatedly described the RMRR provision as an <u>exclusion from</u> <u>the definition</u> of modification under the Clean Air Act, <u>not</u> as an exception to a statutory prohibition. For example, when it issued amended PSD regulations in 1980, EPA stated:

> In September, EPA proposed to <u>exclude</u> "routine maintenance, repair and replacement" <u>from</u> the category "physical change" which appeared in the proposed PSD and nonattainment <u>definitions</u> of "major modification."

45 Fed. Reg. 52,676, 52,703 (Aug. 7, 1980) (emphasis added). Similarly, in 1992, EPA stated:

> The EPA has always recognized that the definition of physical or operational change in section 111(a)(4) [42 U.S.C. § 7411(a)(4)] could, standing alone, encompass the most mundane activities at an industrial facility (even the repair or replacement of a single leaky pipe, or a change in the way that pipe is utilized). However, EPA has always recognized that Congress obviously did not intend to make every activity at a source subject to new source requirements.
>
> As a result, EPA has defined "modification" in the NSPS and NSR regulations to include common-sense <u>exclusions from</u> the "physical or operational change" component of <u>the definition</u>. For example, both sets of regulations contain similar <u>exclusions</u> for routine maintenance, repair, and replacement . . . . (see e.g., 40 C.F.R. 52.21(b)(2)(iii) and 60.14(e)).

---

[5] An Alabama federal district court suggested it agreed with the *Duke Energy* court on this issue. *See United States v. Alabama Power Co.*, 372 F. Supp. 2d 1283, 1296 n.24 (N.D. Ala. 2005) ("Assuming a *Duke Energy* shift of the burden to EPA to prove APC's projects were not RMRR, . . ."). This opinion contains a detailed recital of EPA's "zigs and zags" on PSD issues and inconsistencies between EPA's regulation and litigation postures, concluding that the EPA's enforcement action against Alabama Power Company "is a sport . . . ." *Id.* at 1306 & n.44.

57 Fed. Reg. 32,214, 32,316 (July 21, 1992) (emphasis added). In 2002, EPA again described RRMR as an exclusion from the definition of change:

> The expression "any physical change * * * or change in the method of operation" in section 111(a)(4) of the Act is not defined. We have recognized that Congress did not intend to make every activity at a source subject to the major NSR program. As a result, we have previously adopted several <u>exclusions</u> from what may constitute a "physical or operational change." For instance, we have specifically recognized that routine maintenance, repair and replacement . . . are not considered a physical change or change in the method of operation <u>within the definition</u> of major modification.

67 Fed. Reg. 80,186, 80,187-88 (Dec. 31, 2002) (footnote omitted) (emphasis added). EPA said the same thing a year later:

> The NSR program does not generally affect existing sources, but it does apply if they undergo a "modification." The NSR provisions of the CAA do not create their own definition of "modification," instead borrowing the definition of the term established by section 111 of the CAA, which defined the term for purposes of the New Source Performance Standards (NSPS) program. . . . Under 40 CFR parts 51 and 52, the rules we have promulgated to carry out the NSR program, "major modification" is similarly defined . . . . The regulations further provide that certain activities do not constitute a "physical change or change in the method of operation" under the definition of "major modification." One category of such activities is routine maintenance, repair and replacement (RMRR). The regulatory provisions <u>excluding RMRR from the definition of change constitute the RMRR exclusion</u>.

68 Fed. Reg.61,248, 61,249 (Oct. 27, 2003) (emphasis added).[6] The North Carolina district court was undoubtedly correct when it determined RMRR is an exclusion from the definition of "changes" covered by the PSD requirements and that therefore the plaintiff has the burden of proof on this issue.

In *East Kentucky Power Cooperative*, the district court also tried to apply *Chicago Club*, but misunderstood the Seventh Circuit's analysis. *See* 498 F. Supp. 2d at 995. The Kentucky

---

[6] The United States Court of Appeals for the District of Columbia Circuit, in a case Plaintiff cites, also described RMRR as an exclusion "from the definition of 'modification.'" *New York v. EPA*, 443 F.3d 880, 883 (D.C. Cir. 2006).

court thought that since there was no question that power companies are subject to the Clean Air Act, the "exclusion from a definition" approach of *Chicago Club* didn't apply. *See id.* But there is no suggestion in *Chicago Club* that the Seventh Circuit limited its analysis to questions about whether a defendant is subject to a statute. The point of the Seventh Circuit's reasoning in *Chicago Club* is to recognize the "important distinction" between an exclusion from a statutory definition, meaning something is not covered by a statute at all, and an exception to a statutory prohibition. *See* 86 F.3d at 1429. Because RMRR is an exclusion from the definition of modification under the PSD regulations, *Chicago Club* applies, and Plaintiff has the burden of proving that Duke Energy's projects were not RMRR.

The United States District Court for the Eastern District of Tennessee also analyzed the RMRR burden of proof issue. *See Nat'l Parks Conservation Ass'n*, 618 F. Supp. 2d at 823-24.[7] This court acknowledged the Seventh Circuit's distinction in *Chicago Club*, but decided to follow the *East Kentucky Power* opinion and erroneously held the defendant had the burden of proof on the RMRR exclusion. *Id.* at 824.

In four other cases, district courts found the burden of proving power plant projects were RMRR is on the defendant power company. *See Pennsylvania v. Allegheny Energy, Inc.*, 2008 WL 4960100, *8 (W.D. Pa. Sept. 2, 2008), *adopted as modified*, 2008 WL 4960090 (W.D. Pa. Nov. 18, 2008); *Sierra Club v. Morgan*, 2007 WL 3287850, *12 (W.D. Wis. Nov. 7, 2007); *United States v. Cinergy Corp.*, 2006 WL 372726, *4 (S.D. Ind. Feb. 16, 2006); *United States v. Ohio Edison Co.*, 276 F. Supp. 2d 829, 856 (S.D. Ohio 2003). But these courts merely applied in rote fashion the sound bite from *Morton Salt* and *First City National Bank* that Plaintiff quotes here. These four courts engaged in no meaningful analysis of the issue and ignored the

---

[7] Plaintiff did not cite this case in its opening brief, but Duke Energy is noting it here so that this Court is aware of all relevant authorities.

9

"important distinction" the Seventh Circuit recognized between an exclusion from a statutory definition and an exception to a statutory prohibition. *Chicago Club*, 86 F.3d at 1430. For this reason, these opinions are not persuasive on this issue.

In sum, only three district court cases have meaningfully grappled with the distinction, recognized by the Seventh Circuit, between exclusions from statutory definitions and exceptions to statutory prohibitions. Duke Energy respectfully submits that the proper analysis under this approach is the one offered by the Middle District of North Carolina, and echoed by EPA's own statements, quoted above, describing RMRR as an exclusion from the statutory scheme.

> E.  Plaintiff's contentions about a "*de minimis*" exception are irrelevant to the issue before the Court.

The Court should not be diverted by Plaintiff's contention on page 4 of its Brief about RMRR being a "*de minimis*" exception to the PSD requirements. Contrary to Plaintiff's assertion, in *Alabama Power Co. v. Costle*, 636 F.2d 323 (D.C. Cir. 1979), the D.C. Circuit didn't "hold" anything about the RMRR exclusion. In fact, the terms "RMRR" or "routine maintenance" appear nowhere in this opinion. Plaintiff's statement about *New York v. EPA*, 443 F.3d 880 (D.C. Cir. 2006), is also a stretch. While the court described the RMRR exclusion in terms of a *de minimis* rationale, it did not "hold" this is "the only possible basis" for the RMRR exclusion, as Plaintiff states. *See id.* at 884, 888. In fact, in 1980, when EPA amended the PSD regulations after the D.C. Circuit's decision in *Alabama Power*, EPA did not include the RMRR exclusion in its discussion of "De Minimis Exemptions," but instead listed RMRR as an exclusion from the definition of "modification." *See* 45 Fed. Reg. 52,676, 52,703, 52,705-10 (Aug. 7, 1980). More to the point, whether RMRR is or is not based on a *de minimis* theory has nothing to do with the question of which party has the burden of proof on whether Duke Energy's projects were RMRR.

10

IV.   CONCLUSION

Because RMRR is an exclusion from the definition of the type of projects covered by the PSD provisions of the Clean Air Act, Plaintiff has the burden of proving Duke Energy's projects were not routine maintenance, repair and replacement. Plaintiff's First Motion for Partial Summary Judgment should therefore be denied, and the Court should rule that Plaintiff has the burden of proof on this issue.

Respectfully submitted,

/s/ Robert R. Clark_____
Robert R. Clark, No. 3488-49
Scott R. Alexander, No. 16345-49
Jayna M. Cacioppo, No. 25514-49

Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, IN  46204
Telephone:  (317) 713-3500
Facsimile:  (317) 713-3699
Email: rclark@taftlaw.com
       salexander@taftlaw.com
       jcacioppo@taftlaw.com

Julie L. Ezell
Duke Energy
1000 East Main Street
Plainfield, IN  46168-1782

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2009, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

David C. Bender
McGillivray Westerberg & Bender
305 S. Paterson Street
Madison, WI 53703
E-mail: bender@mwbattorneys.com

Christa Westerberg
McGillivray Westerberg & Bender
305 S. Paterson Street
Madison, WI 53703
E-mail: westerberg@mwbattorneys.com

Robert Ukeiley
Law Office of Robert Ukeiley
435R Chestnut Street, Suite 1
Berea, KY 40403
E-mail: rukeiley@igc.org

/s/ Robert R. Clark

1100478